Dear Dr. Aguillard;
You requested an opinion from this office on behalf of the St. Mary Parish School Board ("Board") concerning the Board's ability to enter into a lease, cooperative endeavor agreement or other arrangement with the Chitimacha Tribe of Louisiana ("Tribe") that would allow the Tribe to use a tract of Sixteenth Section land in exchange for the Board's use of a tract of land owned by the Tribe.
 Your specific inquiries were as follows:
 1. May the Board lease the 50 acre Sixteenth Section tract of land located in the Atchafalya Basin to the Chitimacha Tribe of Louisiana, a Sovereign Nation, for a period of 99 years in exchange for the use of the 25 acre tract owned by the Chitimacha Tribe of Louisiana for the construction of a new school?
 2. May the Board and the Tribe enter into a cooperative endeavor agreement and/or intergovernmental agreement whereby use of the above-described tracts is exchanged? If so, what terms and conditions must be included by law in such an agreement?
 3. Should neither of the above options be available, is there a mechanism whereby the public purposes mentioned above can be accomplished between St. Mary Parish School Board and the Chitimacha Tribe of Louisiana?
Based on the information contained in your letter and applicable law, it is opinion of this office that the Board may not lease or exchange the property in question to the Tribe for a period of 99 years, nor enter into an intergovernmental or cooperative endeavor agreement with the Tribe. However, the Board may consider seeking legislation authorizing the Board to dispose of the Sixteenth Section lands in question through an exchange.
Section 16 lands are held in trust by the State and managed by school boards "in the manner of a statutory trustee" for the benefit of public education. School boards "shall have the right to administer and use property for public school purposes," subject to statutory regulations regarding its sale or lease. La. R.S. 41:638; La. R.S. 41:631 et seq.;Ebey v. Avoyelles Parish School Board, 2003-765 (La.App. 3 Cir. 12/17/03), 861 So.2d 910. The State, by action of the Legislature, is empowered to alienate these Sixteenth Section lands in such a manner as to carry out the purpose of the dedication. Meyer v. State, 121 So. 604
(La. 1929).
The Legislature has established the procedures for the alienation of such lands by a school board in Chapter 6 of Title 41 of the Revised Statutes. The sale or lease of Section 16 lands must meet the statutory requirements of La. R.S. 41:711 et seq., under which a school board may only lease Section 16 lands if a majority of the legal voters are against the sale of the land. See La. R.S. 41:716. Based on your request for a legal opinion, we understand that the St. Mary Parish School Board is not interested in selling the land, but primarily in a lease or exchange of the land. Thus, the procedure for leasing Section 16 lands under La. R.S. 41:711 et seq. is not available to the Board.[1]
Further, even where Section 16 lands are not at issue, the initial term of a lease of school board property may not exceed ten (10) years. See La. R.S. 41:1217(A). La. R.S. 41:1217 allows extensions to the ten-year period provided in Subsection (A). However, even the available extensions will not allow for the initial execution of a 99- year lease contemplated in your request. In addition, the consideration of the lease under La. R.S. 41:1217 must be "paid as a cash rental." Here, the parties wish for the consideration to be in kind (i.e., use of the Tribe's 25 acres of land in exchange for the 99 year lease of the Board's Sixteenth Section lands), which is not allowed by the statute. Thus, pursuant to the relevant statutory authority, the Board may not lease the 50 acre tract of Section 16 land for a period of 99 years.
Your second issue concerns the Board's authority to exchange the Section 16 tract for another tract of land that the Tribe owns. As discussed previously, La. R.S. 17:87.6 generally allows a parish or city school board to dispose of any school site which is not used. This authority to dispose has been interpreted by this office as including the authority to exchange property. See La. Atty. Gen. Op. 1986-591. The Board's general authority under La. R.S. R.S. 17:87.6 is nevertheless subject to the restrictions on the disposal of Section 16 lands. This is confirmed by the provisions of La. R.S. 41:891 et seq., governing the disposal of unused school lands. La. R.S. 41:891, by its own express provisions, does not apply to Section 16 lands. La. R.S. 41:711 etseq., which does apply to Section 16 lands, contains no provisions allowing an exchange. Therefore, the Board may not exchange the Section 16 tract for the Tribe's tract of land.
However, the Legislature may give a school board the authority to exchange a certain parcel of Sixteenth Section land for other designated parcels to be utilized for public school purposes. See La. Atty. Gen. Op. 1994-234. There are several statutes enacted by the Legislature for this purpose. For example, La. R.S. 41:897 provides Bossier Parish School Board with the authority to dispose of Sixteenth Section lands through an exchange. The Board may wish to pursue a legislative enactment which would allow it to exchange the tract of land at issue for another with the Tribe.
In researching and analyzing the two issues addressed above, we have discovered that two previous opinions of this Office, La. Atty. Gen. Op. Nos. 05-0068 and 05-0172, have come close to the present issue without actually addressing the details raised herein. These previous opinions cited La. R.S. 17:87 as authority for school boards, by a mere resolution of the board, to lease Sixteenth Section lands that they manage. Act 100 of 1922 enacted La. R.S. 17:87. While La. R.S. 17:87, enacted in 1922, specifically authorizes school boards to "rent" Section 16 lands by a resolution, courts have held that it has been repealed by La. R.S. 41:1211 et seq., a later enactment. See Ellis v. Acadia ParishSchool Board, 29 So.2d 461, 464-465 (La. 1946), reh'g denied (1947) and La. Atty. Gen. Op. 1940-2, p. 3621. See also Davis v. Franklin ParishSchool Board, 412 So.2d 1131 (1982). Since school boards are included in the definition of "lessor" under La. R.S. 41:1211, the Ellis court held that school boards are required to follow the procedures established in La. R.S. 41:1211 et seq., prior to leasing Section 16 lands and that La. R.S. 17:87 (allowing school boards to rent Section 16 lands by a mere resolution) was repealed by the 1940 enactments in La. R.S. 41:1211et seq.[2]
Therefore, we now clarify that La. R.S. 17:87 alone cannot be viewed as authority for lease of Section 16 lands by school boards, and that a school board must also comply with applicable provisions of Title 41 in leasing Sixteenth Section lands. In view of this clarification, the portions of La. Atty. Gen. Op. Nos. 05-0068 and 05-0172 that discuss the leasing of Sixteenth Section lands are hereby amended. Those two opinions should be read in concert with this opinion and, to the extent that there is conflict, they should be amended to conform to the conclusions presented herein. This opinion serves as a more complete explication of the rules for leasing Sixteenth Section lands. The remainder of opinions 05-0068 and 05-0172 remain valid. Thus, assuming that the leasing provisions of Title 41 are followed, it is our opinion that a school board may lease its Sixteenth Section lands.
Finally, you ask whether the Board may enter into a cooperative endeavor agreement and/or an intergovernmental agreement with the Tribe. Under La. R.S. 33:9022, a cooperative endeavor means "any form of economic development assistance between and among the state, its local governmental subdivisions, political corporations, public benefit corporations, the United States or its agencies, or any public or private association, corporation, or individual."
The Tribe is not one of the enumerated classes which may properly enter into a cooperative endeavor agreement as defined under Louisiana Law (i.e., a local governmental subdivision; political corporation; public benefit corporation; a public or private association, corporation, or individual; or an agency of the United States). Therefore, a contract between the Board and the Tribe would not meet the requirements of a cooperative endeavor agreement as defined in La. Const. art. Article VII, § 14 (C) and La. R.S. 33:9022.
It also does not appear that the School Board and the Tribe may enter into an intergovernmental agreement. La. Const. art. VI, § 20, in defining intergovernmental cooperation, provides that "a political subdivision may exercise and perform any authorized power and function, including financing, jointly or in cooperation with one or more political subdivisions, either within or without the state, or with the United States or its agencies." The Tribe is not one of the enumerated classes of entities that may properly enter into an intergovernmental agreement as defined in Louisiana Law.
To summarize, it would be improper for the Board to lease or exchange Section 16 lands in the manner described in your request due to the restrictions placed on Section 16 lands. The Board may not enter into an intergovernmental agreement or a cooperative endeavor agreement with the Tribe because the Tribe is not one of the enumerated classes of entities which may enter into such agreements. As discussed above, the Board may wish to seek a legislative enactment similar to La. R.S. 41:897.
We hope this sufficiently answers your inquiries. If we can be of further assistance, please do not hesitate to contact us.
 With best regards,
 CHARLES C. FOTI, JR. ATTORNEY GENERAL
 By: _____________________ Uma M. Subramanian Cherie Lato Ryan M. Seidemann Assistant Attorneys General
 CCF, Jr.:UMS:CL:RMS
[1] You have stated during telephone conferences that the Section 16 lands in question are located in swampy, uninhabitable area. La. R.S.41:761 provides for the sale of Section 16 lands "located in a township not inhabitable by reason of the township being swamp or sea marsh, "upon petition of the land owners owning in an area more than one-half of the land in the township," and "by resolution or motion passed by majority of the members of the board present and voting." However, this method of disposal under La. R.S. 41:761 is not applicable here because the Board does not wish to sell the Sixteenth Section land; it wishes to lease it.
[2] Ellis notes that La. R.S. 17:87 is overruled by Act 170 of 1940 to the extent that only a resolution is needed to lease lands. The case implicitly states that, after a resolution pursuant to La. R.S. 17:87, the bid process of Title 41 must be followed.